UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SHIRLENE A. REYNAUD,<br>Appellant | CIVIL ACTION<br>NO. CV-05-0194-A |
| VERSUS | |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Shirlene A. Reynaud ("Reynaud") filed an application for supplemental security income ("SSI") on May 3, 1999, alleging a disability onset date of April 1, 1998 (Tr. p. 58), due to diabetes and high blood pressure (Tr. p. 29). That application was denied by the Social Security Administration ("SSA") on June 4, 1999 (Tr. p. 29). Reynaud did not request a hearing or proceed further with that application.

Reynaud filed another application for SSI on September 12, 2000, again alleging a disability onset date of April 1, 1998 (Tr. p. 61) due to diabetes and hypertension (Tr. p. 64). That application was denied by the SSA on May 23, 2001 (Tr. p. 33). A de novo hearing was held before an administrative law judge ("ALJ") on May 10, 2002 (Tr. p. 148), at which Reynaud was present with a paralegal representative and a vocational expert. The ALJ found that, although Reynaud suffers from "severe" diabetes mellitus,

hypertension, obesity, and degenerative joint disease (Tr. p. 19), she has the residual functional capacity to perform light work that is simple, unskilled, does not require any climbing of ladders, ropes or scaffolds, requires only occasional climbing of ramps and stairs, and only occasional balancing, stooping, kneeling, crouching, and crawling, with limitations in concentration and attention, and no detailed instructions (Tr. p. 23). The ALJ noted that Reynaud has no past relevant work experience, is a younger individual, and has a high school education (Tr. pp. 23, 70). The ALJ concluded that, since Reynaud can perform work which exists in significant numbers in the national economy such as laundry folder, cafeteria worker, and newspaper inserter, Reynaud was not under a disability at any time through the date of his decision on May 29, 2002 (Tr. p. 23).

Reynaud requested a review of the ALJ's decision, but the Appeals Council declined to review it on November 24, 2004 (Tr. p. 3) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). Reynaud next filed this appeal for judicial review, raising the following issues:

> 1. The ALJ posited a defective Step 5 hypothetical question to the vocational expert. A vocational expert's responses to a defective hypothetical question are meaningless.
>
> 2. The ALJ's finding that a significant number of unskilled light occupations exist for Reynaud is not supported by substantial evidence and is legally

2

erroneous.

The Commissioner filed a brief in response to Reynaud's appeal. Reynaud's appeal is now before the court for disposition.

### Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists

3

in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law.

Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Reynaud (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is

5

satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

Issue 1 - Hypothetical Question

First, Reynaud contends the ALJ posited a defective Step 5 hypothetical question to the vocational expert, so the vocational expert's responses are meaningless. More specifically, Reynaud contends the ALJ failed to include in the hypothetical question the actual impairments the ALJ had noted in Step 2 - diabetes mellitus, hypertension, obesity, and degenerative joint disease.

A "severe" impairment is one which imposes more than a minimal limitation on an individual's ability to perform basic work-related physical or mental activities. See 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.906. Thus, the term "impairments," as used above, refers to a claimant's ailments, or disorders. Impairments *cause* functional limitations which affect the ability to work. Obviously, impairments vary in degree of severity from person to person, so they cause different degrees of functional limitations in each person. Therefore, a hypothetical question should include the specific physical and/or mental functional limitations which affect a claimant's ability to work, in order to tailor the question to the particular claimant, rather than merely stating the claimant's impairments. Compare, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

6

Since the ALJ included Reynaud's physical and mental limitations in the hypothetical question, the hypothetical question was proper. It was unnecessary for the ALJ to include Reynaud's impairments in the hypothetical. Reynaud has not specified any physical or mental limitations which the ALJ failed to include in the hypothetical, and the record does not reveal any (Tr. pp. 126, 128, 131, 156-157).

Reynaud suggests in her reply brief that an additional, unidentified impairment may be the cause of her mental limitations, and that the ALJ erred in failing to obtain a consultative examination to explore that possibility. It is Reynaud's burden to prove she has a mental impairment with proper medical evaluations, including a mental status examination, psychological testing, and standardized intelligence tests. See Listing 12.00(D), Mental Disorders, Sources of Evidence. The only "evidence" of depression or low IQ is a state agency memo concerning a telephone call from one of Reynaud's physicians, Dr. Mayeux, which reflects that Dr. Mayeux stated over the phone that Reynaud *may* have a low IQ and that she had been treated in the past for depression (Tr. pp. 146-147). There are no medical records to support these statements. A psychiatric review technique form filled out by a state agency physician found "no medically determinable impairment" (Tr. p. 132). Since there is no evidence in the administrative record to show Reynaud suffers from depression or a low IQ, the ALJ did not

err in failing to order a consultative examination and did not err in failing to include the unidentified and unproven mental impairment in the hypothetical question to the VE.

Therefore, the hypothetical question posed to the VE was correct and substantial evidence supports the Commissioner's conclusion that there is work in substantial numbers in the national economy which Reynaud could perform, given her functional limitations. This issue is meritless.

Issue No. 2 - Existing Work

Reynaud also contends the ALJ's finding that a significant number of unskilled light occupations exist for Reynaud is not supported by substantial evidence and is legally erroneous.

The Social Security Act, 42 U.S.C. §423(d)(2)(A) provides that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several other regions of the country. It does not matter whether - (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." This is further explained in 20 C.F.R. § 404.1566(b), which states:

> "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'"

8

See Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs is a significant number) and Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (110 jobs is not an insignificant number).

The ALJ posed a hypothetical question as to the types of work which could be performed by a person of Reynaud's age, experience, education, and with the residual functional capacity to perform light work that is simple, unskilled, does not require any climbing of ladders, ropes or scaffolds, requires only occasional climbing or ramps and stairs and only occasional balancing, stooping, kneeling, crouching, and crawling, with limitations in concentration and attention, and no detailed instructions (Tr. p. 165). The VE testified that Reynaud could work as (1) a cafeteria attendant (Dictionary of Occupational Titles ("DOT") 311.677-010), which is light duty, with 1100 jobs in Louisiana, (2) a laundry folder (DOT 369.687-018), which is light duty, with 25,000 jobs in Louisiana, or (3) a newspaper inserter (DOT 369.687-022), which is light duty at the lowest semi-skilled level, with 2200 jobs in Louisiana (Tr. pp. 165-167). Clearly, those types of work each exist in significant numbers in the regional economy.

Reynaud also complains of the ALJ's finding that she can perform the semi-skilled job of newspaper inserter. Reynaud contends that, since she does not have any work skills, she cannot perform semi-skilled work. However, the VE noted that newspaper inserter is the lowest level of semi-skilled work and clearly

believed Reynaud was capable of learning and doing that job.[1] Even if she is not, there were two other types of work identified which were unskilled work.

Therefore, substantial evidence supports the Commissioner's conclusion that there is work available in significant numbers in the national or regional economy which Reynaud can perform. This issue is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and Reynaud's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered

---

[1] The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job. Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986).

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 14th day of February, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE